UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
LISA KROLIKIEWICZ and KATHLEEN WAITHE,

                        Plaintiffs,

         -against-                                      COMPLAINT

THE COUNTY OF SUFFOLK, RICHARD DORMER,
ROGER SHANNON, ROBERT DONOHUE, and
JANET GERHAUSER, (in their official and individual
capacities),

                        Defendants.
-------------------------------------------------------------------------X

       Plaintiffs, LISA KROLIKIEWICZ and KATHLEEN WAITHE, by their attorneys, LEEDS BROWN LAW, P.C., complaining of the Defendants herein, alleges, upon knowledge as to themselves and their own actions, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the discrimination against Plaintiffs in the terms, conditions and privileges of their employment, as well as the deprivation by Defendants, under the policies, ordinances, custom and usage of all rights, privileges and immunities secured to plaintiff by the First and Fourteenth Amendments to the Constitution of the United States and all of the laws and statutes thereunder. This action also arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e, *et seq.*; the New York State Executive

Law, Human Rights Law, Section 290 *et seq.*; and any other cause of action which can be inferred from the facts set forth herein.

2. The jurisdiction of this Court is invoked under 28 U.S.C. § 1331, the doctrine of pendant jurisdiction and the aforementioned statutory and constitutional provisions.

3. Venue is proper pursuant to 28 U.S.C. § 1391.

4. On January 24, 2012, complaints of discrimination were filed on behalf of each Plaintiff with the New York State Division of Human Rights ("NYSDHR"), which were dual filed with the Equal Employment Opportunity Commission ("EEOC"). On July 23, 2012, the NYSDHR issued a determination of Probable Cause, finding that there was enough evidence to believe that Plaintiffs had been discriminated against based on race. On March 13, 2013, at Plaintiffs' requests, their respective NYSDHR complaints were dismissed for administrative convenience so that they could pursue their remedies in federal court. A right to sue letter was issued to each Plaintiff, dated April 12, 2013. This action was instituted within 90 days of the issuance of said letters.

5. Any and all other prerequisites to the filing of this suit have been met.

## **PARTIES**

6.  Plaintiff, Lisa Krolikiewicz ("Lisa"), was and still is a resident of the County of Suffolk, State of New York.

7.  Plaintiff, Kathleen Waithe ("Kathleen"), was and still is a resident of the County of Queens, State of New York.

8.  Defendant, the County of Suffolk ("County"), was and still is an agency of the State of New York. The County is a public employer, which operates a police department, Suffolk County Police Department ("SCPD"), headquartered at 30 Yaphank Avenue, Yaphank, New York.

9.  Defendant, Richard Dormer ("Dormer") (Caucasian), was, at all relevant times, employed by the County as SCPD Commissioner.

10. Defendant, Roger Shannon ("Shannon") (Caucasian), was, at all relevant times, employed by the County as Deputy Commissioner.

11. Defendant, Robert Donohue ("Donohue") (Caucasian), was, at all relevant times, employed by the SCPD as a Detective Lieutenant.

12.     Defendant, Janet Gerhauser ("Gerhasuer") (Caucasian), was, at all relevant times, employed by the SCPD as a civilian employee.

## FACTUAL BACKGROUND

13.     Lisa and Kathleen are both African-American females.

14.     Lisa began working as a police officer for the SCPD in 2002.

15.     Kathleen began working as a police officer for the SCPD in 2003.

16.     Lisa and Kathleen were transferred to the Recruitment & Community Outreach Section ("RCOS") in 2007 and 2005, respectively. The purpose of the RCOS was to use recruitment to increase the number of viable female and minority candidates who sit for the SCPD Entrance Exam.

17.     During their time in RCOS, Lisa and Kathleen received many commendations and accolades. Donahue, Dormer, and Steve Levy (Suffolk County Executive) routinely complimented, verbally and in writing, the efforts of Lisa and Kathleen in the RCOS. In addition, Lisa and Kathleen received letters from community leaders and schools in praise of their work, and their positive performance was also noted in various publications, including Newsday and The Long Islander.

18. Gerhauser worked in RCOS as a civilian employee and supervised Lisa and Kathleen. As a civilian employee, Gerhauser could not officially supervise police officers but, due to her close personal relationship with Robert Moore (Police Chief) (Caucasian), she had free rein over RCOS.

19. In early 2011, Gerhauser made discriminatory comments to Lisa and Kathleen. Specifically, she asked if minorities were given an easier test to ensure that they would do better on the examination. Gerhauser also said that she needed a "mental health day" when the SCPD decided to add a Spanish proficiency section to the examination.

20. Throughout Lisa and Kathleen's tenure at RCOS, Gerhauser would tell Donohue that she did not know Lisa and Kathleen's whereabouts even though she had access to the shared department calendar and often made appointments for Lisa and Kathleen. Gerhauser did not treat similarly situated officers who were not African-American in the same manner.

21. On or about March 30, 2011, Lisa and Kathleen received a racist email from Gerhauser. The email in question compared minorities to dogs and contained numerous offensive and racist stereotypes. Specifically, the email compared minorities to dogs in that they both are "mixed in color, unemployed, lazy, can't speak English and have no frigging clue who their Daddy's are."

22. Lisa complained about the racist email to Donohue, who assured her that he would handle the situation and that she should "go to the mall and walk it off."

23. On or about April 4, 2011, Gerhauser said to Lisa, "I was just frustrated with all the phone calls and craziness. Everyone wants something for nothing. Like, 'Hi, I'm Hispanic, do I get extra points on the test?'"

24. That same day, in retaliation for Lisa's complaint of racial discrimination, Bernadette Zimmerman (Civilian Employee) (Caucasian) screamed obscenities at Lisa. Johnson, who observed the incident, alleged that Lisa had brought the altercation upon herself.

25. On or about April 7, 2011, Lisa spoke to Robert Reecks (Sergeant) (African-American). Reecks told Lisa that Donohue had not effectively addressed the situation and, accordingly, he planned on bringing the matter to the attention of Dormer.

26. On or about April 8, 2011, Reecks informed Lisa and Kathleen that Shannon would ensure that an Internal Affairs investigation took place.

27. Later that day, Lisa and Kathleen met with Dormer, Shannon, and Reecks. In this meeting, Dormer and Shannon acknowledged that the email was discriminatory, and provided assurances that Internal Affairs would handle the situation. After Reecks stated that the situation caused a hostile work environment, Shannon assured Kathleen and Lisa that Zimmerman and Gerhauser would be transferred. Kathleen expressed her concern about the possibility of retaliation for complaining about the racial discrimination.

28. On April 10, 2011, Kathleen wrote a letter to Dormer, which she personally hand-delivered to him, in which she clarified her concerns about the issues discussed in the April 8th meeting. In this letter, Kathleen complained about the discriminatory email, and again voiced her concerns regarding potential retaliation.

29. On or about April 11, 2011, Gerhauser and Zimmerman were transferred from RCOS to Chief of Support Services and the Commissioner's Office, respectively. Both transfers were, in effect, promotions in that they provided Gerhauser and Zimmerman significantly more influence, access, and a higher civil service title. Lisa and Kathleen encountered Gerhauser and Zimmerman on a daily basis due to the close proximity of their new assignments.

30. On April 13, 2011, Lisa and Kathleen filed internal EEO complaints with Nancy Byrnes (Sergeant/EEO Liaison) (Caucasian).

31. On April 13, 2011, Kathleen was interviewed at Internal Affairs by Chris Love. Love suggested that Gerhauser meant no harm because the email had not been directed to any person in particular. However, Love conceded that Gerhauser sent the same email to other individuals with the comment that this is a great country "except if you are a WASP," and that Gerhauser had a history of sending inappropriate emails.

32. On April 15, 2011, Lisa was interviewed by Internal Affairs. Normally, Internal Affairs interviews take place in the Internal Affairs Department, which is not visible to the rest of the police department, thus preserving confidentiality. However, in Lisa's case, her interview location was changed at the last minute to a conference room in the legal department. This room had a wall of internal windows and was located only steps away from both Gerhauser and Zimmerman's desks. Zimmerman repeatedly walked past the room during Lisa's interview. Lisa told the interviewer that she felt intimidated because her interview was in view and earshot of Gerhauser and Zimmerman, but the interviewer dismissed her complaint and continued.

33. On May 6, 2011, Kathleen was interviewed by Byrnes regarding the internal EEO complaint she filed.

34. On May 12, 2011, Lisa was interviewed by Byrnes regarding the internal EEO complaint she filed.

35. On or about July 11, 2011, Byrnes informed Lisa and Kathleen that their respective EEO complaints were unfounded. Lisa signed the findings form under protest, and Kathleen refused to sign the form.

36. On or about September 7, 2011, Donohue informed Lisa and Kathleen that, following orders from Moore and "Hauppauge," referring to former County Executive Steve Levy, the department would be transferring all full duty police officers back to Patrol. However, upon information and belief, most officers were not transferred back to Patrol.

37. On or about September 9, 2011, Lisa and Kathleen met with Dormer and Shannon. In the meeting, Lisa and Kathleen asked why, in light of their positive performances, they were being transferred to Patrol[1]. Kathleen further asked Dormer if the transfers were in retaliation for their complaints of discrimination.

38. In the above-mentioned September 9th meeting, Lisa and Kathleen informed Dormer that there were positions available in the Police Smart Unit[2] for which both women were qualified. In response, Dormer told Shannon to discuss the

---

[1] Being transferred back to Patrol is the equivalent of restarting one's career as it can take years to be considered for promotions and transfers.
[2] Many of the duties and responsibilities of the Police Smart Unit overlap with RCOS.

positions with Donohue and asked, "Why are we putting [Lisa and Kathleen] back in a precinct if these positions are available?"

39. On or about September 9, 2011, Shannon told Lisa and Kathleen that Internal Affairs found Gerhauser's email to be an act of discrimination. Shannon assured Lisa that Gerhauser would not return to RCOS, and acknowledged that the timing of Lisa and Kathleen's transfers would now seem retaliatory.

40. On or about September 12, 2011, an order was released, which rescinded the Police Smart Unit positions, stating that the only vacancies were for light duty officers and not full duty officers such as Lisa and Kathleen.

41. On or about September 14, 2011, the Department of Justice issued a preliminary findings letter regarding their displeasure with SCPD's practices regarding minorities and bias crimes.

42. On or about September 19, 2011, Lisa was transferred to the 6th Precinct as a police officer on patrol duty, and Kathleen was transferred to the 4th Precinct as a police officer on patrol duty, leaving Terrance Buckley (Caucasian) as the only remaining RCOS recruiter.

43. On January 24, 2012, Lisa and Kathleen filed verified complaints with the NYSDHR on the basis of race and retaliation.

44. In or around mid-February 2013, Lisa and Kathleen learned of another department directive, dated January 16, 2013, posting a vacancy for the Community Response Bureau. The duties and responsibilities required of the position were nearly interchangeable, if not identical, to those performed by Lisa and Kathleen while in RCOS. Lisa and Kathleen applied for this position but never received a response.

## CLAIMS FOR RELIEF

45. Plaintiffs have been subjected to a hostile work environment, and/or adverse employment actions as well as an atmosphere of adverse employment actions based on their race/color, and in retaliation for their opposition to discriminatory practices. These actions by the County of Suffolk are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e, *et seq*.; and the New York State Executive Law, the Human Rights Law, §290, *et seq.*

46. Suffolk County has, while acting under color of state law, deprived Plaintiffs of their constitutional rights, as secured by the First and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, and all related provisions of the New York State Constitution. The County and its supervisors have intentionally committed, condoned or were deliberately indifferent to the

aforementioned violations of Plaintiffs' constitutional rights. Such deliberate indifference may be inferred in the following ways:

    a. The County's custom or practice of discriminating and/or retaliating against Plaintiffs based on their race/color, and/or their opposition to discriminatory practices. The discriminatory and retaliatory practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers.

    b. Supervisors failed to properly investigate and address allegations of retaliation and/or discrimination.

    c. Inadequate training/supervision was so likely to result in the retaliation, and/or discrimination that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

    d. Policymakers engaged in and/or tacitly condoned the retaliation and/or discrimination.

47. The individual Defendants unlawfully participated in and/or permitted the aforementioned unlawful conduct to perpetuate, without abatement, in violation of Plaintiffs' constitutional and statutory rights pursuant to 42 U.S.C. § 1983.

48. As more fully set forth above, the individual Defendants, aided, abetted, incited, compelled and/or coerced the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law § 296(6) and all other applicable laws.

49.     By reason of Defendants' violation of Plaintiffs' rights, Plaintiffs have suffered a loss of monetary benefits associated with their employment in addition to suffering physical, emotional and other damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, where applicable, for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, injunctive relief, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiffs are entitled. Plaintiffs demand a trial by jury.

Dated: Carle Place, New York
         July 10, 2013

>                              LEEDS BROWN LAW, P.C.
>                              *Attorneys for Plaintiff*s
>                              One Old Country Road, Suite 347
>                              Carle Place, New York 11514
>                              (516) 873-9550
>
>                              _____
>                              DAVID H. ROSENBERG (DR2705)
>                              BRANDON B. OKANO (BO7781)